

United States District Court
Southern District of New York

Lilac Group-W Scranton Corp.,

Plaintiff,

-against-

Wells Fargo Bank, NA,

Defendant.

Complaint

Plaintiff, by its attorneys, Blustein, Shapiro, Rich & Barone, LLP, alleges as and for its complaint against Defendant:

### Jurisdiction & Venue

1.      There is complete diversity of citizenship between Plaintiff and Defendant.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.

3.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in the Southern District of New York via its numerous offices and branch locations within said District.

### Summary

4.      By this action, Plaintiff seeks to recover a judgment against Defendant for money due and owing Plaintiff from Defendant by reason of Defendant's failure to pay rents to Plaintiff in the amounts stipulated and provided for in a certain written lease agreement.

5.      As of the commencement of this action, Defendant owes Plaintiff $385,077.60 as and for rents due for the period of September 1, 2013 through August 30, 2015 pursuant to the Lease Agreement. The amount owing Plaintiff continues to increase by the sum of $16,044.90 per month through September 30, 2024 (the end of the term stated in the Lease Agreement) for a total of $2,117,926.80.

### Parties

6.      At all times mentioned herein, Plaintiff Lilac Group-W Scranton Corp. was and still is incorporated under the laws of the State of Pennsylvania and maintains offices for the transaction of business in the City of Scranton, Pennsylvania.

7.      Upon information and belief, at all times mentioned herein, Defendant Wells Fargo Bank, NA ("Wells Fargo") was and still is a national banking association organized under the laws of the United States, with its head office located at 420 Montgomery Street, San Francisco, California.

8.      Upon information and belief, Wells Fargo maintains over twenty (20) offices and branch locations for the transaction of business throughout the territory encompassing the United States District Court of the Southern District of New York, and regularly transacts business in said territory.

9.      Upon information and belief, at all times mentioned herein, Wells Fargo's registered office is at 101 North Phillips Avenue, Sioux Falls, South Dakota.

10.      Upon information and belief, at all times mentioned herein, Wells Fargo is a subsidiary of Wells Fargo & Company.

11.    Upon information and belief, Wells Fargo & Company is a diversified financial services company incorporated in the State of Delaware and maintains its headquarters in San Francisco, California.

12.    Upon information and belief, at all times mentioned herein, Wells Fargo & Company is registered with the U.S. Comptroller of the Currency under charter number 1.

13.    Upon information and belief, in October 2008, Wells Fargo & Company acquired the assets of Wachovia Corporation.

<u>Factual Allegations</u>

14.    Plaintiff is the owner of a certain parcel of real property ("Premises"), improved by a multi-story office building ("Building"), situated in the State of Pennsylvania and located at 130 Wyoming Avenue, Scranton, Pennsylvania.

15.    Plaintiff purchased the Premises subject to the terms of a certain written lease agreement (hereinafter "Lease Agreement"), dated September 22, 2004,  between First States Investors 3300, LLC ("FSI"), as landlord, and Wachovia Bank, National Association ("Wachovia"), as tenant. A true copy of said Lease Agreement is attached hereto as **Exhibit A**.

16.    Upon information and belief, the Lease Agreement was made between FSI and Wachovia as part of a certain Agreement of Sale and Purchase, dated May 10, 2004, setting forth a sale-leaseback transaction involving a portfolio of 147 properties (the "Portfolio") that were owned by Wachovia and located in ten (10) states.

17.    Upon information and belief, at the time of the sale between FSI and Wachovia, Wachovia was occupying, in whole or in part, the properties in the Portfolio for use in its banking business.

18.     Upon information and belief, the sale-leaseback of the properties in the Portfolio by Wachovia to FSI occurred on September 22, 2004, when Wachovia conveyed to FSI the 147 properties included in the Portfolio, and the same were leased back to Wachovia by FSI.

19.     Upon information and belief, the final purchase price, subject to adjustments, was $504,613,403.00, which was the sum of Wachovia's book values for all of the properties that were included in the Portfolio.

20.     The Portfolio properties included the Premises, and title to the Premises was transferred by Wachovia to FSI as part of the sale-leaseback held on September 22, 2004.

21.     FSI and Wachovia negotiated a base rent of $5.95 per square foot, plus additional leasing compensation to FSI in the form of a proportionate share of operating expenses and other capital and maintenance costs for the properties. The rent to be paid was the same for each property in the Portfolio and not to be determined on a property-by-property basis.

22.     Wachovia identified and denominated certain properties in the Portfolio as "must take" properties.

23.     On September 22, 2004, and as part of the sale-leaseback, FSI and Wachovia entered into a certain Master Agreement, as well as into separate leases ("Leases") as to each of the properties in the Portfolio.

24.     The Master Agreement was intended to set forth additional covenants and agreements with respect to the Leases between FSI, on the one hand, and Wachovia, on the other. A true copy of the Master Agreement is attached hereto as **Exhibit B**.

25.     With respect to the intention of the parties entering into the Master Agreement,

the Master Agreement stated:

> It is the intention of the parties to set forth such additional covenants and
> agreements in this Master Agreement, as opposed to setting forth the
> same in each of the Leases, due to (i) the application thereof to more
> than a single Lease Property, and/or (ii) the fact that the same are not
> intended to apply to any third party (i.e., unaffiliated) successors to the
> Master Landlord [FSI] and/or Tenant [Wachovia] under the Leases, except
> as provided in this Master Agreement; but this sentence is intended as
> explanatory and shall not be deemed to limit the express provisions
> hereof.

**Exhibit B,** Master Agreement, Background at ¶ C.

26.     Said Master Agreement also provided:

> Without limiting the generality of the foregoing, it is intended, as more
> particularly provided herein, that this Master Agreement be integrated
> with, and constitute a part of, each Integrated Lease. In that regard,
> certain provisions of each Lease (by way of example only, Article XI of
> each Lease setting forth Wachovia's Termination Rights) were written
> to fully reflect the terms and conditions that apply under such Lease
> from and after the point, if any, that it becomes a Non-Integrated
> Lease, but only partially reflect the terms and conditions that apply
> under such Lease while it remains an Integrated Lease; it being
> intended that (i) for so long as each Lease shall remain an Integrated
> Lease, it shall be read together with this Master Agreement (as an
> indispensable part thereof) in determining the rights of the Landlord
> and the Tenant under the Lease (and that, in the event of any conflict
> between the terms and conditions of this Master Agreement and the
> terms and conditions of the Lease, the terms and conditions of this
> Master Agreement shall control and apply in all respects, to the extent
> herein expressed), and (ii) from and after the point, if any, that it
> becomes a Non-Integrated Lease, it shall be read independent of this
> Master Agreement (which shall no longer be a part thereof) in
> determining the rights of the Landlord and the Tenant under the Lease,
> provided, that this clause (ii) shall not be deemed to limit, in any way,
> the rights and/or obligations of any party to this Master Agreement

> under this Master Agreement (including the obligations of Wachovia to
> pay any Excess Termination Rights Payments pursuant to Section 3.4
> hereof).

**Exhibit B**, Master Agreement, Background, at ¶ D.

27.     The Master Agreement classified each Lease of the Portfolio properties as either

an "Integrated Lease" or a "Non-Integrated Lease." **Exhibit B**, Master Agreement, at §1,

Defined Terms.

28.     The Master Agreement set forth certain conditions and restrictions on Wachovia's

ability to exercise certain rights and/or options under the various Leases made on September 22,

2004 between it and FSI, which conditions and restrictions applied in some instances irrespective

of whether Wachovia continued to be a tenant in possession under a particular Lease.

29.     The Master Agreement provided:

> "Excess Termination Rights Payment", with respect to any exercise of Wachovia's
> Termination Rights under a Non-Integrated Lease at a time when the Available
> Termination Rights Area is less than the Exercise Termination Area as to such exercise,
> shall mean an amount equal to the net present value of the Annual Basic Rent that
> would have been payable for the balance of the Initial Term with respect to the excess
> of (i) the Exercise Termination Area as to such exercise, over (ii) the then Available
> Termination Rights Area (herein called the "Excess Exercise Termination Area"), had
> such Lease not been terminated as to such Excess Exercise Termination Area (which net
> present value shall be determined as of the day immediately following the Early
> Termination Date, using a discount rate equal to the Prime Rate).

**Exhibit B**, Master Agreement, at §1, Defined Terms.

30.     The Master Agreement provided:

> "Available Termination Rights Area", at any time, shall mean (i) the Aggregate
> Termination Rights Area at such time, reduced by (ii) the aggregate amount of the
> Exercise Termination Area as to all prior exercises of Wachovia's Termination Rights
> under any Lease (*provided, that* the amount in this clause (ii) shall not include, *i.e.*, shall
> be reduced by, the amount of any Excess Exercise Termination Area as to which Tenant
> shall have made an Excess Termination Rights Payment)

**Exhibit B**, Master Agreement, at §1, Defined Terms.

31.     Upon information and belief, from September 22, 2004 through April 1, 2008, the Lease Agreement as to the Premises was classified as an "Integrated Lease" under the Master Agreement.

32.     By operation of a Second Amendment to the Master Agreement dated April 1, 2008, the Lease Agreement was reclassified as a "Non-Integrated Lease" under the Master Agreement. A true copy of the Second Amendment to the Master Agreement dated April 1, 2008 is attached hereto as **Exhibit C**.

33.     The Second Amendment to the Master Agreement provided, in part, for the Lease Agreement for the Premises to "immediately become [a] Non-Integrated Lease." **Exhibit C** at ¶ D and §5.

34.     On March 8, 2013, FSI and Wells Fargo entered into a Third Amendment to the Master Agreement.  A true copy of the Third Amendment to the Master Agreement dated March 8, 2013, is attached hereto as **Exhibit D**.

35.     The Third Amendment to the Master Agreement provided, in part, for the deletion of certain provisions of the Master Agreement, including Section 12 of the Master Agreement. **Exhibit D** at §6.2.

<u>The Lease Agreement</u>

36.     Attached hereto as **Exhibit A**, and made a part hereof, is the aforementioned Lease Agreement dated September 22, 2004 made by and between FSI and Wachovia concerning the Premises.

37.     The Lease Agreement is for a fixed term ("Term") that ends on September 30, 2024.

38.     By written assignment dated April 11, 2008, FSI transferred and assigned to Plaintiff the Lease Agreement. A true copy of said assignment is attached hereto as **Exhibit E**.

39.     At the time of the assignment of the Lease Agreement to Plaintiff, the Lease Agreement was classified as a "Non-Integrated Lease" under the Master Agreement.  (See **Exhibit C** – Second Amendment to Master Agreement).

40.     At the time of the assignment of the Lease Agreement to Plaintiff, Wachovia was the tenant in possession of the Premises.

41.     The Lease Agreement contained a provision permitting Wachovia to terminate the Lease with respect to "all or-any" portion(s) of the leased Premises, which termination right was labeled "Wachovia's Termination Right." **Exhibit A**, Lease Agreement at §11.

42.     Wachovia's Termination Right was subject to certain conditions and limitations that were set forth in both the Lease Agreement and the Master Agreement.

43.     As to Wachovia's Termination Right, the Lease Agreement provided, in Article XI, as follows:

> 11.1 Wachovia's Termination Right
>
> (a)     Subject to the terms and conditions of this Article XI, during the Initial Term of this Lease (but not during any Renewal Term), Wachovia shall have the right (herein called "Wachovia's Termination Right"), exercisable from time to time, to terminate this Lease with respect to all or-any portion(s) of the then Leased Premises (other than the whole or any portion(s) of any Short-Term Additional Space then constituting a part of the Leased Premises). Wachovia may exercise Wachovia's Termination Right only by written notice to Landlord (each, a "Termination Rights Exercise Notice"), which shall (i) indicate whether

Wachovia is exercising Wachovia's Termination Right with respect to the entirety of the then Leased Premises (which may be done only if no Short-Term Additional Space then constitutes a part of the Leased Premises), or less than the entirety of the then Leased Premises, (ii) in any case that Wachovia is exercising Wachovia's Termination Right with respect to less than the entirety of the then Leased Premises, specify, with particularity, the portion(s) of the Leased Premises with respect to which Wachovia's Termination Right is being exercised (such portion(s) of the Leased Premises being herein separately referred to as the "Vacate Space"), and be accompanied by a floor plan showing the location and configuration of the Vacate Space, (iii) the date upon which Wachovia is electing to terminate this Lease with respect to the entirety of the Leased Premises or the Vacate Space, as the case may be, which date shall not be earlier than the date that is nine (9) months after the date of Wachovia's Termination Rights Exercise Notice (such date being herein called the "Early Termination Date"). Notwithstanding the foregoing, Wachovia's right to specify Vacate Space comprising less than all of the then Base Leased Premises located on any floor of the Building, shall be contingent upon such Vacate Space being of a size and configuration that makes it separately leasable to third party tenants.

(b)      Notwithstanding the provisions of Section 11.1(a) above, during the Integration Period, Wachovia's Termination Right shall be limited by the provisions of Section 3.3 of the Master Agreement.

(c)      Notwithstanding anything to contrary contained herein, it is understood and agreed that Wachovia's Termination Right shall belong solely to Wachovia, and, notwithstanding any Assignment, shall survive as a right belonging solely to Wachovia for the balance of the Initial Term. Accordingly, Wachovia's Termination Right may be exercised, at anytime during the Initial Term, by, and only by, Wachovia (whether or not Wachovia is then the Tenant hereunder). Upon request of Wachovia made, from time to time, during any period that Wachovia is not the Tenant hereunder, Landlord shall acknowledge the foregoing in writing.

**Exhibit A**, Lease Agreement, at §11.

44.     Section 3 of the Master Agreement, which is referred to in the Lease

Agreement, provides:

   3. Limitations on Wachovia's Termination Rights.

      3.1 As expressed in Article XI of the Leases, Wachovia may, from
   time to time during the Initial Term (but not during any Renewal Term),
   exercise Wachovia's Termination Rights to terminate a Lease with respect to
   all or any portion(s) of the then Base Leased Premises under any Lease, all in
   the manner and subject to the terms and conditions set forth in such Article
   XI.

      3.2 Notwithstanding the foregoing, it is not the intention of the
   parties hereto that Wachovia's Termination Rights be unconditional as
   between Master Landlord (and, if applicable, any Landlord), on the one hand,
   and Wachovia, on the other; more specifically, (i) Wachovia's exercise of
   Wachovia's Termination Rights under any Integrated Lease, shall be subject to
   the provisions of Section 3.3 below, and (ii) Wachovia's exercise of Wachovia's
   Termination Rights under any Non-Integrated Lease, shall be subject to the
   provisions of Section 3.4 below.

      3.3 With respect to all Integrated Leases, Wachovia's Termination
   Rights may be validly and effectively exercised if, and only if, at the time of
   such exercise, the then Available Termination Rights Area is equal to or
   greater than the Exercise Termination Area as to the exercise of such
   Wachovia's Termination Rights; and any purported exercise by Wachovia of
   Wachovia's Termination Rights under any Integrated Leases at a time when
   the then Available Termination Rights Area is less than the purported Exercise
   Termination Area as to the exercise of such Wachovia's Termination Rights
   shall be rendered void and of no force or effect (but the fact that such
   purported exercise is rendered null and void shall not prevent any subsequent
   exercise by Wachovia of Wachovia's Termination Rights consistent with the
   provisions hereof).

      3.4 With respect to all Non-Integrated Leases, Wachovia's
   Termination Rights may be validly and effectively exercised even if, at the
   time of such exercise, the then Available Termination Rights Area is less than
   the Exercise Termination Area as to the exercise of such Wachovia's
   Termination Rights (it being understood that neither Master Landlord, any
   Landlord, nor any other party, shall have any right to object to any exercise of
   Wachovia's Termination Rights under any Non-Integrated Lease under any

circumstances); but, in such event, Wachovia shall (on or prior to the Early Termination Date) pay the Excess Termination Rights Payment with respect such exercise by Wachovia to (i) the Designated Portfolio Lender, if there is a Designated Portfolio Lender, or (ii) the Master Landlord, if there is no Designated Portfolio Lender; in each case, such payment shall be sent to such party at the address provided to Wachovia therefor (or, at the election of such party, to by wire transfer of immediately available funds to an account designated by such party). In no event will the obligation of Wachovia to pay Rent under a Non-Integrated Lease terminate until the applicable Excess Termination Rights Payment required pursuant to this Section 3.4 is paid pursuant hereto; it being understood that any payment made Wachovia to a Depositary (or a court of competent jurisdiction) consistent with the provisions of Section 3.5 hereof shall be deemed paid pursuant hereto.

3.5 Notwithstanding anything to the contrary contained herein, if, a bona fide good faith dispute(s) exists with respect to either (A) the exercise of Wachovia's Termination Rights under any Integrated Lease as to some or all of the Leased Premises under such Lease or (B) the payment of an Excess Termination Rights Payment with respect to any Non-Integrated Lease (including with respect to the party entitled to receive such payment), then, and in each such case, Wachovia shall have the right (at its option), without waiving any other rights and remedies that it may have under the circumstances, in lieu of paying the disputed rental amounts or Excess Termination Rights Payment, to make payment thereof to a Depositary (or, if Wachovia acting in good faith is not able to designate a Depositary prior to the date that is ten (10) Business Days prior to the due date of such payment, to a court of competent jurisdiction) as and when such amounts are or would be due under such Lease or this Master Agreement. Such Depositary (or, as the case may be, such court of competent jurisdiction) shall hold such payments in escrow pending the resolution of such dispute. Provided Wachovia timely pays all such disputed amounts to a Depositary (or, as the case may be, a court of competent jurisdiction) pursuant to this Section 3.5, Wachovia shall not be deemed to be in default of the applicable Lease or this Master Agreement. In the event such dispute is resolved in favor of Wachovia, the amounts held by such Depositary (including interest thereon, if any) (or, as the case may be, a court of competent jurisdiction) shall be immediately released to Wachovia, and Master Landlord shall, within one (1) Business Day following the issuance of such ruling, pay to Wachovia an additional amount equal to the excess of (x) interest on the amount paid to the Depositary (or, as the case may be, a court of competent jurisdiction) pursuant to this Section 3.5 at the Applicable Rate from the date such amounts were paid to the Depositary (or, as the case may be, a court of competent jurisdiction) until the

date such funds were returned to Wachovia, over (y) the interest (if any) earned on the amounts paid to the Depositary and, as required hereby, returned therewith to Wachovia. In the event such dispute is resolved against Wachovia, the amounts held by such Depositary (including interest thereon, if any) (or, as the case may be, a court of competent jurisdiction) shall be immediately released to the party entitled to such funds, and Wachovia shall, within one (1) Business Day following the issuance of such ruling, pay to such party an additional amount equal to the excess of (xx) interest on the amount paid to the Depositary (or, as the case may be, a court of competent jurisdiction) pursuant to this Section 3.5 at the Applicable Rate from the date such amounts were paid to the Depositary (or, as the case may be, a court of competent jurisdiction) until the date such funds were returned to such party, over (yy) the interest (if any) earned on the amounts paid to the Depositary and, as required hereby, returned therewith to such party.

**Exhibit B**, Master Agreement at §3.

45.     Upon information and belief, Wachovia began to experience heavy losses in its loan portfolios during the subprime mortgage crisis, and in or about October 2008, Wachovia's parent company, Wachovia Corporation, was acquired by Wells Fargo & Company.

46.     After the acquisition of Wachovia Corporation by Wells Fargo & Company, Defendant Wells Fargo took over possession of the Leased Premises and commenced payment of the Rents due under the Lease Agreement to the Landlord.

47.     In or after October 2008, Defendant Wells Fargo assumed Wachovia's liability under the Lease Agreement and commenced payment of the Rents due under the Lease Agreement to the Landlord.

48.     In or about March 2010, Plaintiff and Defendant Wells Fargo entered into a certain First Amendment to the Lease Agreement, which First Amendment is attached hereto as **Exhibit F**.

49.     By the First Amendment to the Lease Agreement, Plaintiff and Defendant incorporated into the Lease Agreement certain terms and provisions pertaining to Plaintiff's conversion of the Premises into a condominium form of ownership, and stipulated to a payment to be made by Defendant, as the tenant, to Plaintiff, as landlord, which payment was in lieu of the reimbursement of taxes that was provided for in the Lease Agreement. By letter dated November 30, 2012 and addressed to Plaintiff, Defendant Wells Fargo purported to exercise "Wells Fargo's Termination Rights" under the Lease Agreement. A copy of said letter is attached hereto as **Exhibit G**.

50.     In relevant part, the letter stated:

> This letter shall serve as a Wells Fargo Termination Rights Exercise Notice pursuant to Section 11.1 of the Lease. Wells Fargo hereby exercises Well's Fargo's Termination Right with respect to the Third Floor (Unit #2) totaling 7,515 rsf. The Early Termination Date for the Third Floor (Unit #2) shall be August 30, 2013. Terms used in this letter but not defined herein shall have the meanings ascribed to them in the Lease [Agreement].

**Exhibit G.**

51.     The terms "Wells Fargo's Termination Rights" and "Wells Fargo's Termination Rights Exercise Notice," the terms used in the aforementioned letter, are not terms defined in the Lease Agreement.

52.     According to Section 11.1(a) of the Lease Agreement, the Termination Rights Exercise Notice "shall… specify, with particularity, the portion(s) of the Leased Premises with respect to which Wachovia's Termination Right is being exercised (such portion(s) of the Leased Premises being herein separately referred to as the "Vacate Space"), and be accompanied by a floor plan showing the location and configuration of the Vacate Space."

53.     Wells Fargo's Termination Rights Exercise Notice was not accompanied by a floor plan showing the location and configuration of the Vacate Space.

54.     In letters dated July 26, 2013 and September 13, 2013, legal counsel for Defendant Wells Fargo admitted that a floor plan showing the location and configuration of the Vacate Space did not accompany Wells Fargo's letter dated November 30, 2012 purporting to exercise a termination right. Said letters dated July 26, 2013 and September 13, 2013 by counsel for Wells Fargo are collectively attached hereto as **Exhibit H.**

55.     Under applicable Pennsylvania Law, where a contract prescribes a mode in which a right of termination shall be exercised or specifies an act to be done as a condition to the right to terminate, such provisions must be strictly followed. Int'l Hobby Corp. v. Rivarossi S.P.A., No. CIV. A. 96-3082, 1998 WL 376053, at *5 (E.D. Pa. June 30, 1998) aff'd, 203 F.3d 817 (3d Cir. 1999); Eddystone Borough v. Peter V. Pirozzi Gen. Contracting, LLC, No. 2:13-CV-01470-PBT, 2015 WL 1542284, at 6 (E.D. Pa. Apr. 7, 2015) ("Conditions precedent to a contract termination must be strictly fulfilled.").

56.     Because the purported Termination Notice did not contain "a floor plan showing the location and configuration of the Vacate Space" as required by Section 11.1(a) of the Lease Agreement, the purported Termination Notice was ineffective to terminate any portion of lease of the Premises.

57.     Because Section 11.1 specifically limited Wachovia's Termination Right to Wachovia itself ("[n]otwithstanding anything to contrary contained herein" and "notwithstanding any Assignment"), Wells Fargo was not vested with the right to terminate under the Lease Agreement.

58.     In this regard, the Lease Agreement provided:

> "Notwithstanding anything to contrary contained herein, it is understood
> and agreed that Wachovia's Termination Right shall belong solely to
> Wachovia, and, notwithstanding any Assignment, shall survive as a right
> belonging solely to Wachovia for the balance of the Initial Term.
> Accordingly, Wachovia's Termination Right may be exercised, at anytime
> during the Initial Term, by, and only by, Wachovia (whether or not
> Wachovia is then the Tenant hereunder).

**Exhibit A**, Lease Agreement at §11.1(c)

59.     By operation of the terms of the Lease Agreement and applicable law, Defendant

Wells Fargo had no right to terminate the Lease Agreement pursuant to Section 11.1; such right

belonged solely to Wachovia regardless of any assignment to Wells Fargo.

60.     In addition, the Master Agreement limited Wachovia's ability to validly exercise

Wachovia's Termination Rights on certain conditions stated therein.

61.     In this regard, Section 3.3 of the Master Agreement provides:

> 3.3 With respect to all Integrated Leases, Wachovia's Termination
> Rights may be validly and effectively exercised if, and only if, at the time of
> such exercise, the then Available Termination Rights Area is equal to or
> greater than the Exercise Termination Area as to the exercise of such
> Wachovia's Termination Rights; and any purported exercise by Wachovia of
> Wachovia's Termination Rights under any Integrated Leases at a time when
> the then Available Termination Rights Area is less than the purported Exercise
> Termination Area as to the exercise of such Wachovia's Termination Rights
> shall be rendered void and of no force or effect (but the fact that such
> purported exercise is rendered null and void shall not prevent any subsequent
> exercise by Wachovia of Wachovia's Termination Rights consistent with the
> provisions hereof).

**Exhibit B**, Master Agreement at §3.3 (emphasis added).

62.     In this regard, Section 3.4 of the Master Agreement provides:

> 3.4 With respect to all Non-Integrated Leases, Wachovia's
> Termination Rights may be validly and effectively exercised even if, at the

time of such exercise, the then Available Termination Rights Area is less than the Exercise Termination Area as to the exercise of such Wachovia's Termination Rights (it being understood that neither Master Landlord, any Landlord, nor any other party, shall have any right to object to any exercise of Wachovia's Termination Rights under any Non-Integrated Lease under any circumstances); but, in such event, Wachovia shall (on or prior to the Early Termination Date) pay the Excess Termination Rights Payment with respect such exercise by Wachovia to (i) the Designated Portfolio Lender, if there is a Designated Portfolio Lender, or (ii) the Master Landlord, if there is no Designated Portfolio Lender; in each case, such payment shall be sent to such party at the address provided to Wachovia therefor (or, at the election of such party, to by wire transfer of immediately available funds to an account designated by such party). In no event will the obligation of Wachovia to pay Rent under a Non-Integrated Lease terminate until the applicable Excess Termination Rights Payment required pursuant to this Section 3.4 is paid pursuant hereto; it being understood that any payment made Wachovia to a Depositary (or a court of competent jurisdiction) consistent with the provisions of Section 3.5 hereof shall be deemed paid pursuant hereto.

**Exhibit B**, Master Agreement at §3.4 (emphasis added).

63.     Defendant Wells Fargo did not identify to Plaintiff, in its letter dated November 30, 2012 (**Exhibit G**) or at any time thereafter, the "then Available Termination Rights Area" and/or the "Exercise Termination Area," as referred to in the Master Agreement.

64.     Upon information and belief, by the language §11.1(c)[1] of the Lease Agreement, Wachovia intended, among other things, that no other person and/or entity that held a tenancy under the Lease Agreement or any of the Leases made as part of the sale-leaseback transaction, to be in a position to trigger Wachovia's obligation to make an Excess Termination Rights Payment to the Designated Portfolio Lender and/or the Master Landlord because a person or

---

[1]     "Wachovia's Termination Right shall belong solely to Wachovia, and, notwithstanding any Assignment, shall survive as a right belonging solely to Wachovia for the balance of the Initial Term. Accordingly, Wachovia's Termination Right may be exercised, at anytime during the Initial Term, by, and only by, Wachovia (whether or not Wachovia is then the Tenant hereunder)."

entity holding a tenancy under a Lease exercised the Termination Right provided for in Section 11, as doing so could triggered Wachovia's obligation to make an Excess Termination Rights Payment.

65.    In a letter dated July 8, 2013, Plaintiff objected to Defendant Wells Fargo's purported exercise of Wachovia's Termination Rights. A copy of said letter is attached here as **Exhibit I.**

66.    Before Defendant's purported exercise of a termination right, the monthly installment of rent due from Defendant to Plaintiff under the Lease Agreement was $10,139.90.

67.    Before Defendant's purported exercise of a termination right, the monthly installment of common area & maintenance ("CAM") charges due from Defendant to Plaintiff by operation of the Lease Agreement and amendments thereto was $23,056.39.

68.    Before Defendant's purported exercise of a termination right, the monthly installment due as a payment in lieu of taxes ("Taxes") from Defendant to Plaintiff was $9,820.70.

69.    From September 1, 2013 through the present, Defendant has failed and refused to pay Plaintiff the sums owed of $10,139.90 for rent, $23,056.39 for CAM, and $9,820.70 for Taxes.

70.    By operation of the Lease Agreement and amendments thereto, there was due and owing Plaintiff from Defendant the following sums:

| Month | Rent Billed | CAM Billed | Taxes | Gross Amount Billed |
|---|---|---|---|---|
| Sep-13 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Oct-13 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Nov-13 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Dec-13 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Jan-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Feb-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Mar-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Apr-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| May-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Jun-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Jul-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Aug-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Sep-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Oct-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Nov-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Dec-14 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Jan-15 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |
| Feb-15 | $  10,139.90 | $  23,056.39 | $  9,820.70 | $  43,016.99 |

| Mar-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |
| Apr-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |
| May-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |
| Jun-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |
| Jul-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |
| Aug-15 | $ 10,139.90 | $ 23,056.39 | $ 9,820.70 | $ 43,016.99 |

71.    Defendant has paid plaintiff the following sums:

| Month | Rent Paid | CAM Paid | Taxes Paid | Gross Amount Paid |
|---|---|---|---|---|
| Sep-13 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Oct-13 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Nov-13 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Dec-13 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Jan-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Feb-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Mar-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Apr-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| May-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Jun-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Jul-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Aug-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Sep-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Oct-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Nov-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Dec-14 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |

| | | | |
|---|---|---|---|
| Jan-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Feb-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Mar-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Apr-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| May-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Jun-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Jul-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |
| Aug-15 | $ 6,357.82 | $ 14,456.59 | $ 6,157.68 | $ 26,972.09 |

72.     Defendant has failed and refused to pay Plaintiff the sum of $385,077.60,[2] which remains owing Plaintiff from Defendant as and for rent, CAM and Taxes per the terms of the Lease Agreement and amendments thereto.

73.     By reason of the foregoing, there is presently due and owing Plaintiff from Defendant the sum of $385,077.60 by reason of Defendant's non-payment of rent, CAM and Taxes as aforesaid. Said amount continues to increase by the sum of $16,044.90 per month through September 30, 2024, the end of the Term of the Lease Agreement.

74.     Plaintiff has duly demanded of Defendant payment of the aforesaid amounts, and Defendant has refused payment.

### As and For a First Cause of Action

75.     Plaintiff prays for a judgment from this Court declaring and adjudging the rights and liabilities of the parties under the Lease Agreement, Master Agreement and the respective amendments thereto, as well as, more particularly, with respect to the ineffectiveness of

---

[2]     Computed as 24 months @ $16,044.90 per month.

Defendant's purported exercise of Wachovia's Termination Rights, together with an award of reasonable attorney's fees as provided for in the Lease Agreement.

### As and For a Second Cause of Action

76.     By reason of Defendant's failure to pay Plaintiff the sums due under the Lease Agreement and Amendments thereto, Defendant breached the Lease Agreement and is liable to Plaintiff for money damages.

77.     By reason of Defendant's failure to pay Plaintiff the sums of $16,044.90 per month since September 1, 2013, Defendant breached the Lease Agreement and is liable to Plaintiff for money damages.

78.     By reason of Defendant's failure to pay Plaintiff rents, CAM charges, and Taxes as aforesaid, as of July 10, 2015 there is due and owing Plaintiff from Defendant the sum of $385,077.60, which amount increases by the sum of $16,044.90 per month for each and every month remaining in the Term of the Lease Agreement.

79.     By reason of Defendant's wrongful and ineffective partial termination of the Lease Agreement, there is due and owing Plaintiff from Defendant the sum of $2,117,926.80.[3]

80.     Plaintiff demands judgment against Defendant in the sum of $2,117,926.80, together with an award of reasonable attorney's fees as provided for in the Lease Agreement.

**Wherefore**, Plaintiff prays for judgment as follows:

(a)     declaring and adjudging the rights and liabilities of the parties under the Lease Agreement, Master Agreement, and respective amendments thereto,

---

[3]     Computed at $16,044.90 x 108 months remaining (September 2015 through September 2024) + $385,077.60 for the past due balance.

and, more particularly with respect to the validity or ineffectiveness of Defendant's purported exercise of Wachovia's Termination Rights;

(b)     awarding Plaintiff money damages against Defendant in the amount of $2,117,926.80;

(c)     an award of reasonable attorney's fees as provided for in the Lease Agreement;

(d)     the costs and allowable disbursements of this action; and

(e)     such other and further relief as is just, proper & equitable under the circumstances at bar.

Dated:      Goshen, New York
            November 23, 2015

                              Yours etc.
                              BLUSTEIN, SHAPIRO, RICH
                              & BARONE, LLP

                              Gardiner S. Barone, Esq.  (GSB 7938)
                              *Attorneys for Plaintiff*
                              10 Matthews Street
                              Goshen, New York 10924
                              (845) 291-0011